**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHESAPEAKE APPALACHIA, L.L.C., | : | 4:16-cv-50 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| EDWARD M. OSTROSKI and | : | |
| KATHLEEN OSTROSKI, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

**August 8, 2016**

Presently pending before the Court is Plaintiff Chesapeake Appalachia,

L.L.C.'s Motion for Summary Judgment on Count II (Doc. 23) filed on April 29,

2016.  For the reasons that follow, the Court shall grant the Plaintiff's Motion for

Summary Judgment and declare that the subject lease between Plaintiff and

Defendants does not permit class arbitration.

## I.    STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there

is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law."  FED. R. CIV. P. 56(a). A dispute is "genuine" only if there is a

sufficient evidentiary basis for a reasonable jury to find for the non-moving party,

and a fact is "material" only if it might affect the outcome of the action under the governing law. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court should view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences therefrom, and should not evaluate credibility or weigh the evidence. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial. *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In advancing their positions, the parties must support their factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them.

2

*See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

## II.   FACTUAL AND PROCEDURAL SUMMARY

The facts in this matter are not in dispute.  Defendants Edward M. and Kathleen M. Ostroski (collectively "Defendants" or "the Ostroskis"), Pennsylvania landowners, entered into a lease agreement (the "Lease") with Plaintiff Chesapeake Appalachia, L.L.C. ("Plaintiff" or "Chesapeake"), an Oklahoma company, which gave Chesapeake the right to explore for and produce gas from Defendants' property.  (Doc. 25, ¶ 1). Upon entering into the Lease, the Ostroskis received a signing bonus by check that was mailed across state lines from Oklahoma to Pennsylvania.  (Doc. 25, ¶ 6).  Defendants have also received royalties from Chesapeake on gas produced.  These royalties were paid by check and mailed across state lines from Oklahoma to Pennsylvania.  (Doc. 25, ¶ 7).

The Lease contains a provision known as the "Payments to Lessors" clause, which provides, in relevant part, as follows:

2. <u>GAS</u>:      To pay Lessor an amount equal to one-eighth (1/8) of the revenue realized by Lessee for all gas and the constituents thereof produced and marketed from the Leasehold, less the cost to transport, treat and process the gas and any losses in volumes to the point of measurement that determines the revenue realized by Lessee.

(Doc. 24-1, pp. 1-2).

The Lease also contains an arbitration provision that provides as follows:

<u>ARBITRATION</u>: In the event of a disagreement between Lessor and Lessee concerning this Lease, performance thereunder, or damages caused by Lessee's operations, the resolution of all such disputes shall be determined in accordance with the rules of the American Arbitration Association.  All fees and costs associated with the arbitration shall be borne equally by Lessor and Lessee.

(Doc. 24-1, p. 2).

On December 4, 2015, Defendants filed an arbitration demand against Chesapeake, asserting claims related to the Lease and the calculation of royalties thereunder.  (Doc. 25, ¶ 8).  In the arbitration, the Ostroskis seek to represent a statewide putative class of:

Every person except governmental entities who is, or has been, a royalty owner under an oil and gas lease in which Chesapeake Appalachia, L.L.C., is the present lessee, either because it is named as the lessee or because the lease has been assigned to it, and (i) the lease conveys rights to natural gas in Pennsylvania, (ii) natural gas has been produced under the lease, and the lease includes a provision requiring the arbitration of disputes.

(Doc. 25, ¶ 9).

4

Thereafter, on January 11, 2016, Chesapeake filed the instant action, seeking

an injunction barring Defendants from continuing to pursue any class claims

against Chesapeake in the already filed arbitration or in any other arbitration.

(Doc. 1).  On April 29, 2016, Chesapeake filed the instant Motion for Summary

Judgment (Doc. 23), which was appropriately briefed by the parties. (Docs. 24, 25,

26, 27, 30).[1] This matter is thus ripe for our review.

## III.   DISCUSSION

### A. The Federal Arbitration Act

The parties first disagree over which law is to be applied to this motion.

Defendants contend the FAA governs because the Lease concerns interstate

commerce. The Ostroskis dispute that the Lease concerns interstate commerce, and

contend the PAA applies.

An arbitration clause is subject to the Federal Arbitration Act if the

arbitration clause is part of a valid written contract "evidencing a transaction

involving commerce."  *See* 9 U.S.C. §§ 1, 2. The FAA's application here turns on

---

[1]      Following full briefing on the summary judgment motion, on June 20, 2016, the
Ostroskis filed a Motion pursuant to Fed. R. Civ. P. 56(d), for leave to take discovery in aid of
the resolution of the pending summary judgment motion.  (Doc. 31).  The Ostrokis seek to take
discovery to establish that all of the gas produced by Chesapeake in Pennsylvania is sold at the
well.  The Ostrokis contend that record evidence of this fact will render the Federal Arbitration
Act ("FAA") inapplicable to this matter, and require the Court to apply the Pennsylvania
Uniform Arbitration Act ("PAA") to this matter.  However, for the reasons that follow, it is of no
moment to our determination that the FAA applies to this matter whether the gas produced at the
Ostroskis' Pennsylvania well is sold at the wellhead.  Thus, we shall deny the Rule 56(d) motion.

whether the Lease involves interstate commerce.  The Supreme Court has held that the term "involving commerce" signifies the "broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56 (2003) ("[T]he FAA encompasses a wider range of transactions than those actually 'in commerce'-that is, 'within the flow of interstate commerce.'").  The Supreme Court explained that "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'" *Id*. at 56-57 (quoting *Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.,* 334 U.S. 219, 236, 68 S. Ct. 996, 1006, 92 L. Ed. 1328 (1948)). Thus, "[o]nly that general practice need bear on interstate commerce in a substantial way." Id. at 57.  Our sister district courts have explained that "[t]his is not a rigorous inquiry; in fact, the contract need only the slightest nexus with interstate commerce," for the FAA to apply.  *Nova CTI Caribbean v. Edwards*, 2004 U.S. Dist. LEXIS 41, *9 n.3 (quoting *Crawford v. W. Jersey Health Sys.,* 847 F. Supp. 1232, 1240 (D.N.J. 1994)).

Applying those guidelines, we find that the Lease here clearly involves interstate commerce.  It is undisputed that Chesapeake is a limited liability company organized and existing under the laws of the State of Oklahoma (Doc. 1,

¶ 12) and that the Ostroskis are residents of Pennsylvania.  (Doc. 1, ¶ 13).  It is further undisputed that the payments arising under the terms and conditions of the Lease that were made by Chesapeake to the Ostroskis  were issued in Oklahoma and received in Pennsylvania.  (Doc. 25, ¶¶ 7-8).  While the Lease at issue involves real property solely situated in Pennsylvania and the Ostroskis are Pennsylvania residents, the subject Lease was negotiated with Chesapeake, an Oklahoma company.  Even if the gas produced by Chesapeake is sold at the wellhead in Pennsylvania, the Lease is clearly part of a chain of transactions involving interstate commerce for it is well-established that the end use of the natural gas and oil extraction in the Marcellus Shale is not simply contained within Pennsylvania's borders. Accordingly, the Lease satisfies the FAA's "involving commerce" test and the FAA will be applied.[2]

---

[2] *Accord Chesapeake Appalachia, LLC v. Scout Petrol., LLC,* 809 F.3d 746, 753 (3d Cir. 2016)(applying the FAA to an oil and gas lease materially identical to the Ostroskis'); *Alexander v. Chesapeake Appalachia, LLC,* 839 F. Supp. 2d 544, 550 (N.D.N.Y. 2012)(applying FAA because the oil and gas leases "clearly evidence transactions involving commerce," including "development of gas resources which will ultimately be placed in an interstate pipeline subject to federal regulation"); *Bird v. Turner,* 2015 WL 5168575, at *2 (N.D. W. Va. Sept. 1, 2015)(applying FAA because "[b]ased on the substance of the lease and the arbitration defendants' assertion that the lease was intended for the extraction of natural gas to be transported in interstate commerce, it is clear that the plaintiffs' lease 'evidenc[es] a transaction involving commerce.'"(citation omitted)); *Mesa Operating Ltd. Partnership v. Louisiana Interstate Gas Corp.,* 797 F.2d 238, 243 (5th Cir. 1986)("[c]itizens of different states engaged in performance of contractual obligations in one of those states are engaged in a contract involving commerce under the FAA . . . [because] . . . [s]uch a contract necessitates interstate travel of both personnel and payments.").

**B. Availability of Class Arbitration Under the Lease**

We now turn to an analysis as to whether class arbitration is available under the parties' Lease.  To review, the pertinent section of the Lease provides:

> ARBITRATION: In the event of a disagreement between Lessor and Lessee concerning this Lease, performance thereunder, or damages caused by Lessee's operations, the resolution of all such disputes shall be determined in accordance with the rules of the American Arbitration Association.  All fees and costs associated with the arbitration shall be borne equally by Lessor and Lessee.

(Doc. 24-1, p. 2).  It is undisputed that the arbitration clause of the Lease does not mention class arbitration.

The United States Supreme Court has stated that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 684 (2010)(emphasis in original).  In *Stolt-Nielsen*, the Supreme Court reasoned that class arbitration cannot be implicitly agreed to, "because class-arbitration changes the nature of arbitration to such a degree that it cannot be presumed that the parties consented to it by simply agreeing to submit their disputes to an arbitrator."  *Id.* at 685.  Thus, the jurisprudence on this point is clear, "[c]lass arbitration is a matter of consent," and [a]n arbitrator may employ class procedures only if the parties have authorized

them." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2066 (2013)(citing *Stolt-Nielsen*, 559 U.S. at 684).

Our analysis on this point is necessarily abbreviated because the jurisprudence is abundantly clear.  Because the plain language of the arbitration clause in the Lease is silent as to class arbitration, we find that the Lease does not allow Defendants to compel it.

## IV.    CONCLUSION

For all the reasons stated herein, we shall grant Chesapeake's Motion for Summary Judgment.

An appropriate Order shall issue.